Good morning, Your Honors. May it please the Court. I'm Daniel Aguilar, Court-Appointed Amicus Curie, on behalf of Clarence Gibson. Good morning. And thank you for taking this case pro bono. We really appreciate it. I appreciate it as well. Clarence Gibson alleged a classic claim of retaliation. He had a right to receive a vegetarian meal in accordance with his religious practices, and when he requested that meal, he was denied it, he was mocked for asserting his constitutional rights, and then he was punched in the face. Where do we find the retaliation claim addressing the protest because he didn't get the vegetarian meal? Kind of unclear as to retaliation because of the prior civil lawsuit or retaliation because of the exercising his First Amendment rights. Sure. So in there, are you asking specifically about the complaint or it is in the complaint? I would say it's in the Section 5, the fifth claim of the parties on ER-152. And in that, in the first five paragraphs of this page, and after the unrelated claims were dismissed at the motion-to-dismiss stage, this was essentially the only operative And there, he details that he had repeatedly requested a vegetarian meal, and that was the entire genesis for why he was brought down to the downser's office, was to discuss whether or not the fish that he had received was a vegetarian meal, whether or not he would eat that. And then he says that he was punched in the face. So is it your argument that the punch in the face was in retaliation for his requesting a vegetarian meal? It is. Yes, Your Honor. So that is the retaliatory act that you argue. Yes. And the disputed issue here that needs to be resolved by a jury, because there is competing evidence on both sides, is whether or not that punch was due to Gibson posing a threat and striking Shelton in the first instance, or whether, as Gibson testified to, he had received conflicting orders to both stand up and go back to his cell and to sit down because they weren't done with the conversation yet. And then he alleges and testified that he was punched without cause or without posing a threat to the officers. So a jury has already determined the excessive force claim. So are you suggesting that that claim would also have to be relitigated? No, I don't believe so, Your Honor. I believe the excessive force claim has been sufficiently litigated, and that claim was tried by the jury and lost. How could a jury find for Gibson on the retaliation claim but not for him on the excessive force claim? Sure. So, first of all, I think it was clear, and defense counsel argued this in her closing argument, that the issue of retaliation or his first-amendment meal was not at issue in that case. And then specifically, the elements and the considerations by the juries are fairly different in this way. When they are considering whether or not the officers used excessive force, they're considering the event as a whole. And there, they also learned that Gibson had been convicted of a battery and had had a prison adjudication for battering a non-confined person. So there, they're wondering, is the force used by the officers excessive, given the fact that we know that Gibson struck them? And that's a different consideration than the more narrow consideration involved in the retaliation claim, which is, when Shelton initially struck Gibson, was he posing a threat, and was that use of force justified and excessive and unnecessary? I believe that the jury could have found against Gibson on an excessive force claim through this reasoning. Gibson struck back after he had been struck and then continued to resist throughout that time. The use of force after the officers and Gibson had gone over the desk and while Gibson kept his hands beneath him, resisting being handcuffed, was necessary. But we aren't specifically considering whether that initial punch by itself is excessive force, because we're considering the events as a whole. And the Supreme Court has made clear, I believe in the case Wilkins v. Gady, that a de minimis use of force or a single shove or punch is not always going to give rise to an Eighth Amendment excessive force claim. And I think that's the case here and why they're legally different. A single punch, even if it's unjustified, may not always give rise to a successful excessive force claim. So you're saying the officer could have punched first, that would be retaliation, but it would not preclude the officers from winning on excessive force? I think that's correct, Your Honor. What would the jury then be instructed? Would the jury be told that this is just a retaliation claim and it is their duty to decide if the strike was in retaliation for exercising the First Amendment right? I think that's right, Your Honor. And I think – I don't think that on remand, if this proceeds to trial, that it would be appropriate for the jury to learn about the other trial. It seems like that might create more confusion and prejudice. So I think the case at trial should be limited to this initial strike and sort of ignoring everything that happens after it, because I think that's the claim that survives and should be remanded. But it wouldn't necessarily go to trial. It would still be remanded. If it does, if it does, right. And I think the reason that this has to be remanded is that the grant of summary judgment was inappropriate for two reasons. First, even though the district court limited the complaint to allege retaliation only based on the civil lawsuits, Gibson testified that he had notified the officers that he had filed a civil lawsuit. So even if you're understanding the complaint in that method, there is sufficient evidence to allow a trier fact to find in Gibson's favor. So your answer just a moment ago to Judge Rolandson suggested that you think we don't know enough at this point to say it needs to go to trial, that we need to ask the district court to consider summary judgment again, or could you clarify that? Sure. I'm not particularly aware of whether the defendants may move for summary judgment again. I don't believe that they can, but I had not considered that issue fully. So in the event that they procedurally are allowed to, I think that might be a bar. But I think in the greatest likelihood, this case would go to trial if it was remanded, because I believe they've exhausted their summary judgment arguments. Well, if you said that no one focused on the retaliation claim, have all the facts come out regarding that matter? I believe so, because I believe that they have they received Gibson's testimony that he specifically had this argument, I mean, non-argument discussion twice, about whether or not he could receive this vegetarian meal. So those, even if they're able to come forth with more facts and depositions and testimony from the defendants, there's still going to be that genuine issue of fact that needs to be resolved. So even if the record's more fully developed, I think that that still needs to get resolved by the jury. But discovery is closed, isn't it? I believe that's true, yes, Your Honor. But does the trial judge now have to decide the scope of the retaliation claim? I believe that this Court can decide the scope of that claim based on what the district court initially understood it to be, which was retaliation based on his request for a vegetarian meal. And that's at, I believe, ER 143 in the motion to dismiss order, where they said, Plaintiff further alleges, and this is the Court, that on August 12, 2005, defendants used excessive force against Plaintiff in retaliation for a plaintiff's request for a religious vegetarian meal. So I believe that's a proper construction of the complaint, and I believe that limiting it based on answers that he gave in his deposition is inappropriate for the reasons that this Court enunciated in its unpublished decision in Wright v. FBI and the two Seventh Circuit decisions on this point, Fine v. Ryan International Air and Lesley or Kohler v. Lesley-Heinman Incorporated. Is it your position that even at the deposition, he did not limit this retaliation claim, that while he said he made reference to the prior lawsuit, but he also made reference to exercising his First Amendment rights complaining about the vegetarian meal? And I think that's true, Your Honor, and I think specifically at page ER 99, on page 51 of the transcript, where he says, yeah, I told them I had the civil case dealing with my vegetarian meal, just give me my meal. I think there he's arguing this is parallel actions. First, I had a civil complaint, and then specifically, I am actually requesting this vegetarian meal today. Unless the Court has further questions, I'd like to reserve the remainder of my time. Thank you. May you please support Diana Esquivel on behalf of the defendants, appellees? Unless the Court has any questions concerning Mr. Gibson's informal opening brief, I would like to address my argument to the retaliation claim raised by Amicus counsel in this matter. Well, the only question I would raise is, what is your position, should this Court consider the issues raised by the Petitioner in his opening brief, or only consider the arguments raised by Amicus? Should the Court address both, or should the Court limit itself to the Petitioner? Well, Your Honor, given the fact that Mr. Gibson is pro se in this matter technically other than the appointment of Amicus, that's why I asked if there's anything in particular in his brief, because unfortunately, it was a very generalized list of complaints without any thorough discussion or analysis of any of the other grounds he raised. He basically challenged every single decision of the district court judge, but without fully developing why those rulings were erroneous. So that's why I ask, unless the Court has any specific questions, I would just submit to the Court that, given the lack of any analysis as showing an error, the Court should affirm all those prior decisions. Do you agree with opposing counsel that all of the facts that pertain to the segmented retaliation claim have been brought out? No, Your Honor. And I would point out that part of the problem arises from the very, for lack of a better word, vague allegations made in the fifth claim, which is the claim that was at issue and eventually tried, being the events that occurred on August 12, 2005. The only allegation they're asserting, aside from all the factual content that led to the use of force, is at the excerpts of record at page 153, where there he, Mr. Gibson, alleges that defendants used excessive force, quote, in violation of plaintiffs' first, sixth, eighth, and fourteenth U.S. constitutional rights for requesting plaintiffs' religious dietary meal as acts of cruel and unusual punishment, retaliation of further harassment and threats of intimidation. But doesn't that suggest, though, that the retaliation claim then should not have been limited? Because it sounds like he even there is saying, I spoke, I complained, and then I was retaliated against, and it was about the vegetarian meal. Correct, Your Honor. As far as the complaint is concerned, but then that's why we have discovery. Discovery is for the purpose of fleshing out what is the basis of your claim. So you're referring to his statement at the deposition? Correct, Your Honor. Well, several states. But even at the deposition, don't you read his response broad enough to actually include the protest about the vegetarian meal and retaliation as a result? Yes, Your Honor. But, again, when Mr. Gibson was repeatedly asked, please explain to you, because counsel, again, during the deposition, repeatedly stated, I'm confused. I don't understand your basis of retaliation. Do you have any authority for the notion that a pro se plaintiff can be bound by a deposition response like that to limit their claims? I don't have any authority, Your Honor, but I would rely on the doctrine of judicial estoppel in the sense that, first, Mr. Gibson was not new to litigation. While I understand he was pro se and may not articulate the basis for his claims as clearly as counsel may, but he did testify at his deposition that he had been deposed before, that he had three other lawsuits pending, all dealing with excessive force, and he understood the purpose of why he was there to answer questions. And when counsel repeatedly asked him, explain the basis for your litigation for your retaliation claim, and it wasn't just one question. It was repeated throughout, and finally, when she said, so are you saying that the reason they used excessive force was because of your litigation activities, he never corrected her. So by his acquiescence, his reason for that was that he was there to answer questions. Kagan, you just admitted that at many other places, when he asks why did they hit you, he was explaining that he thought they hit him because of the request for the vegetarian meal. So how can we not read the entire deposition as a whole and understand that that's also what he was saying? Well, Your Honor, the deposition itself is also very vague, because Mr. Gibson would not just answer the questions. And he never And so if it's vague, would we not give him the benefit of this vagueness? Well, no, Your Honor, because he had the opportunity to clarify what the basis of his claim was. He was repeatedly asked, and at no point did he ever say, I was hit because I was requesting my dietary. He would go into his explanation and then say, that's when Shelton hit me. But the only place in his deposition testimony where he finally connected Shelton's first strike to any activity was at his deposition at page 29, lines 11 through 14, when he, after he explained that Shelton told him to sit back down, and then he says, quote, I just remember him grabbing my arm, and I pulled my arm away from him, like, what are you doing, man? That is when he punched me. I think that is what reacted for him to punch me, because I pulled my arm away. So this is the other way. If this Court were to decide that the trial court erred by limiting the retaliation claim, what is your argument as to what we should do, remand, so that that claim can be considered? No, Your Honor. I believe remand is futile because the jury's decision on the excessive force claim has already resolved two essential elements of the retaliation claim, that there was an adverse action here. Mr. Gibson and Amicus Counsel have all conceded that the adverse action complained of is the use of physical force. But that doesn't mean that the officers didn't punch first, does it? Well, whoever punched first, and this is why I stated this, it really is irrelevant. The question is, why was he punched? So under – whether it's under Mr. Gibson's set of facts or the defendant's set of facts of what occurred in the office that evening, the question is not who punched first, but why did the blow come. Right. But if on Mr. Gibson's set of facts, the blow came first from the officers because he requested a vegetarian meal. Now, couldn't it have been that the jury on the excessive force claim thought that after that, there was a scuffle and, you know, he did try to resist and the officers used an appropriate amount of force and overall it wasn't excessive force, but yet we could still be back to he asked for a vegetarian meal and it hit him, and couldn't that be retaliation? No, Your Honor, again, because they're fundamentally incompatible with the jury's finding of excessive force. This wasn't a situation where Mr. Gibson said, my claim against Officer Shelton is for that first punch that was done in retaliation for exercising my protected activity, and all the other blows came because they were using excessive force. This was the – all their use of force was excessive and unnecessary. So when you look at what the adverse action is, and a jury already determined this, I mean, couldn't the jury just have thought that there wasn't – I have to remember the language, but something about malicious and sadistic behavior? I mean, if they didn't find that the officers were malicious and sadistic, that itself would have been a reason for them not to find for him an excessive force, but they still – it wouldn't necessarily be incompatible with thinking that they did hit him because he asked for a vegetarian meal, it just wasn't malicious and sadistic. Well, Your Honor, to have malicious and sadistic, you have to look that there is an improper use of force, and malicious and sadistic means that there was an underlying evil or bad intent motive for using it. So by saying that he struck me in retaliation for exercising my rights, that is an evil motive for using force.  But if he said, I'm going to have a vegetarian meal, that I'm instructing you as a matter of law counts as malicious and sadistic. Well, that's an element of an excessive force claim. And do we have the ability here to know what evidence was actually presented to the jury on the excessive force claim? We know that claim was presented, but we don't know what evidence was offered. Well, the evidence, Your Honor, is essentially the same that as far as the plaintiff is concerned, because in front of the court does have before it the trial transcripts of all the evidence that was presented at trial. But, you know, since the court separated the retaliation claim from the excessive force claim, it's also possible that the court narrowed the evidence that was provided on the excessive force claim so as to not get into the retaliation claim. I mean, that's kind of the unknown for us here. Not necessarily, Your Honor, because, again, reviewing the trial transcripts, the Mr. Gibson was allowed to present evidence and provide his own testimony as to all the events that led up to the use of force. That included his repeated request for what he thought was a vegetarian meal, even though it was explained to him that fish under the regulations at the time did comply with the vegetarian, and he disagreed with that. So there was testimony and evidence presented, his chrono, the order allowing him to have a vegetarian meal, that was in evidence. So all these underlying facts were presented to the jury as a foundation to what led up to the use of force, including the use of force. Ginsburg, was any discovery ever taken regarding the intent of the officers when the first blow was struck, which would be pertinent to the retaliation claim? No, Your Honor, again, because based on Mr. Gibson's representation that the use of force came when he yanked his arm away, and then, again, counsels repeated questioning as to whether it was based on the litigation activity or exercising his religious rights, and his repeated, again, either vagueness or acquiescence to her representation of what the claim was based on, there was no reason to. If this case were remanded, you could request the reopening of discovery for the limited purpose of taking that discovery, couldn't you? Correct, Your Honor. If this Court is inclined to remand this matter for that, I would definitely request it, because in the screening order, the district court never said these are the claims asserted in the fifth claim. When the motion to dismiss was granted that disposed much of the case, again, the Court never explained what the claims were. Is that true? We were just hearing part of the motion to dismiss ruling that defined this claim as a claim about retaliation for requesting a vegetarian meal. No, that's not correct, Your Honor. And I would refer you to the order dismissing the – and I'm sorry, I don't have that excerpt in front of me, but, again, the only thing the Court said, that this case shall proceed on plaintiff's fifth claim against the five officers that eventually went to trial. Again, there was no explanation as to its excessive force, its retaliation, its right to free exercise of one's religion, or its unequal protection. None of that was stated. Well, that would be up to the district court if we remanded it to decide whether or not there was additional discovery that was warranted, and that would be within the district court's purview to determine whether or not to reopen discovery for a limited time or purpose. Correct, Your Honor. I just couldn't make that request, and not unusual to have the parties request when it's remanded additional discovery on a specific subject. That is correct, Your Honor. And, again, as far as this Court is concerned, I would say if the Court is inclined, again, to remand it despite the jury's verdict, which disposes of two of those elements, is to require the district court to determine what is the claim or allow the parties to open discovery to flush out the basis of the retaliation claim, because, again, defendants reasonably relied on what Mr. Gibson stated at his deposition. Thank you, counsel. Thank you, Your Honors. I actually have a question. Could I just ask one question? I'm sorry. Am I right that you're conceding that there's no heck bar? It's not an argument that I have raised in the answering brief or that I'm pursuing here on appeal, whether it's something that might be available based on any additional discovery if the Court decides to remand. I will not be – I'm not in a position to say that it's not available. I would need to look at what new evidence, if any, might arise. That's fair. All right. Thank you, counsel. Mr. Rebottle. First, on whether additional discovery is required, I think that although additional discovery may be taken, I'm not sure that it would have any effect on a summary judgment motion, because Mr. Gibson still has testified that these tight chronology of events culminated in him being punched in the face. Although there may be additional discovery and facts on the defendant's side that can act against that, I'm not sure that it would resolve the issue of material fact about retaliation. Never know. You never know. Correct. Just one point. Judge Marshall, on your question about the evidence that the Court should consider, I believe this Court's decision in Frazier v. Goodale, which states that the Court may only consider the record that was submitted to the district court at summary judgment, resolves that question. So although we are aware of the jury's decision in the trial, I don't believe that the evidence that was adduced in that trial was properly before this Court. And then on the scope of limiting Gibson's complaint, I think the purpose of that, although Gibson did say and agreed with defense counsel, these are my claims, I think Wright and Miller, the treatise there, section 2264, gives the reason why that shouldn't be a legally binding admission, that the reason for not – for holding a party not bound at trial by his or her own testimony is that the statement of a layman in the stress of examination should not be regarded as conclusive. And I believe that's true here. And to the extent that this Court recognizes that there might not be a full development of the law on this particular issue, the legal effect on the claims presented in a complaint based on statements made in a deposition, that might be a reason to publish an opinion on that narrowly limited point. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the Court. And again, we thank counsel for agreeing to take this case pro bono.
judges: Marshall, Rawlinson, Friedland